IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal by Millbrook : 
Homeowners Association : 
from the January 20, 2021 : 
Conditional Use Decision of : 
the Palmyra Township Board : No. 528 C.D. 2021
of Supervisors : Submitted: September 9, 2022
 : 
Appeal of: Millbrook Homeowners : 
Association : 


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                     HONORABLE CHRISTINE FIZZANO CANNON, Judge
                     HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                            FILED:  September 19, 2023


The Millbrook Homeowners Association (Association) appeals from the order of the Pike County Court of Common Pleas (trial court) that dismissed the Association's appeal for lack of standing. The Association appealed to the trial court from the decision of the Board of Supervisors of Palmyra Township (Board) that granted an application for a conditional use (Application) filed by Lake Region VI, LLC (Applicant) for a project to add 5 single-family dwellings to an existing development containing 16 multi-family dwellings on a 10.71-acre parcel located in Palmyra Township (Project and Township, respectively).[1]  Reproduced Record

---

[1] The Board Opinion dated February 16, 2021, may be found in the Reproduced Record (R.R.) at 378a-99a.

(R.R.) at 378a. Because we conclude that the trial court erred in determining that the Association lacked standing, we reverse the trial court and remand this matter for further proceedings.

The relevant facts as summarized by the Board and gleaned from the record are as follows. Applicant submitted the Application to the Board for the Project in August 2020, which the Board analyzed under Section 4.401 of the Palmyra Township Zoning Ordinance and its accompanying "Schedule of Use Regulations" (Ordinance).[2] R.R. at 378a. The Project is described as a "conservation subdivision design residential development" which is permitted as a conditional use in the R-Residential Zoning District, where the subject property is located. *Id.* In order for the Project to proceed as provided by the Ordinance, Applicant was prepared to enter into a transfer of development rights that "will allow a density transfer of approximately 10 acres of non-adjoining property to be perpetually preserved in its current undeveloped state." *Id.* at 379a.

The Application was referred to the Planning Commission and to various consultants and engineers for review. R.R. at 380a. One Palmyra Township Supervisor recused himself from review of the Application, citing a conflict of interest. The appointed Township solicitor, R. Anthony Waldron, III Esquire, also removed himself from advising the Board on the Application because he represents Applicant. The Board engaged the services of an alternate Township solicitor,

---

[2] Zoning Ordinance of Palmyra Township, Pike County (August 20, 2013). Section 3.200 of the Ordinance defines "conditional use" as a "use which is not appropriate to a particular zone district as a whole, but which may be suitable in certain localities within the district only when specific conditions and factors prescribed for such cases" as described in the Ordinance are present. "Conditional uses are allowed or denied by the [Board] after recommendation by the Planning Commission." *Id.*

Richard B. Henry, Esquire,[3] to provide legal services to the Planning Commission and the Board for the Application. *Id.* at 380a-81a.

The Application was submitted to the Township on August 7, 2020, and was referred to the Planning Commission, which first reviewed the Application at its meeting on September 8, 2020, after which it asked the Board to schedule a public hearing on October 20, 2020. R.R. at 381a. The Planning Commission met again on October 13, 2020, November 10, 2020, December 8, 2020, and January 15, 2021, where it continued its review of the Application. *Id.* The Planning Commission received information from Applicant and entertained comments and questions from numerous parties at the November, December, and January meetings, which were stenographically recorded.[4]

The Board held a public hearing on the Application on October 20, 2020, which was stenographically recorded.[5] R.R. at 382a. Applicant's manager and its engineer appeared at the hearing, where they were questioned by Applicant's counsel and the Township solicitor, and both parties presented numerous exhibits regarding the Project for the record. *Id.* Several individuals from the community also attended the public hearing. *Id.* Regarding the issue of standing to participate in the public hearing, the Township solicitor made the following statement:

---

[3] For ease of discussion, Mr. Henry, the alternate Township solicitor, will be referred to as the Township solicitor.

[4] The transcript of the Planning Commission's November 10, 2020 meeting may be found in the Reproduced Record at 90a-201a. The transcript of the Planning Commission's December 8, 2020 meeting may be found in the Reproduced Record at 202a-64a. The transcript of the Planning Commission's January 12, 2021 meeting may be found in the Reproduced Record at 265a-323a. The record does not contain a transcript for the Planning Commission's September or October meetings.

[5] The transcript of the Board's October 20, 2020 public hearing may be found in the Reproduced Record at 4a-89a.

3

Now that everybody has heard the nature and scope of the [A]pplication from [] [A]pplicant's counsel itself—or himself, does anybody believe that they have intervenor status in this matter? That would mean that they would elevate themselves to a party. They would be able to present witnesses, testimony, and specifically cross[-]examine any of the witnesses that [] [A]pplicant would put on the stand. Does anybody believe that you have intervenor status?

There's no response.

Any of the individuals that are here tonight will be afforded the opportunity, at the conclusion of the hearing, to speak on the record pro or con in regard to the [A]pplication from what you've heard tonight. You generally won't be sworn; you probably—you're going to make a statement rather than attempt to cross[-]examine or examine witnesses at that time. At that time, we'll ask you specifically what your name and address is so we can at least provide some sort of contact with you if we need to do so in the future.

R.R. at 12a-13a.

The Board received public comment from five community members at the October 20, 2020 public hearing. *See* R.R. 58a-88a. Although none of these individuals were permitted to formally question witnesses or offer evidence, they each commented on various concerns with the Project and its potential impact on traffic, safety, water, and sewer service in their community, as well as concerns about what they believed was the lack of adequate notice of the public hearing. *Id.* at 55a-88a, 382a. Each individual who offered public comment identified himself/herself by name and address. At least four of the individuals who commented identified themselves as residents of Millbrook, the community adjacent to the site of the

4

proposed Project.[6]  The Township solicitor advised Millbrook resident, Mr. Bova, that "whoever is counsel for your association should make sure that he or she picks up this information [information presented at the public hearing] and appears at either the [P]lanning [C]omission meeting or . . . the next time the [B]oard meets on this …." *Id.* at 69a.  At the conclusion of the public hearing, the Township solicitor announced that the Board hearing was closed, and the Board would render a decision at its next meeting. *Id.* at 86a.  The Township solicitor advised those present at the public hearing that they should attend the upcoming meeting of the Planning Commission with further comments on the Project, and that the Planning Commission would make a recommendation to the Board before the Board voted to approve or deny the Application. *Id.* at 87a-88a.

Although Planning Commission review typically occurs before a Board public hearing, here, the Planning Commission recognized that its review would not be "sufficient or complete" before the Board's October 20, 2020 public hearing, and it asked the Board to delay its decision until the Planning Commission completed its review.  R.R. at 385a-86a.  The Board found that the Planning Commission "entertained a volume of public comment at its October and November meetings," but a transcript of the October meeting, if it was transcribed, is not part of the record. *Id.* at 386a.  Mr. Frassa, a Millbrook resident, offered comments at the November Planning Commission meeting and explained that he and other Millbrook residents who attended the Board's public hearing did not understand the Township solicitor's

---

[6] Tammy Moore identified herself as a Millbrook resident.  R.R. at 59a, 77a.  Anthony Bova identified himself as a Millbrook resident and a member of the board of the Millbrook Homeowners Association. *Id.* at 65a.  Joe Frassa identified himself as a Millbrook resident. *Id.* at 71a, 80a-83a. Jerome Lucchese identified himself as a Millbrook resident. *Id.* at 72a-73a.  Andrew Crouthamel provided his address and also offered public comment, but it is unclear from the transcript whether he, too, is a Millbrook resident. *Id.* at 73a.

explanation about intervenor status. *Id.* at 99a, 101a. Another Millbrook resident and president of the Association's board, Gerald Kissel, also attended the November Planning Commission meeting and provided comments about the Project. *Id.* at 97a. Counsel for the Association attended the December Planning Commission meeting virtually, where he spoke on behalf of the Association. *Id.* at 202a, 218a, 231a. Counsel for the Association attended the January Planning Commission meeting in person, where he again spoke on behalf of the Association. *Id.* at 271a, 284a. At that meeting the Township solicitor referred to the Association as an objector. *Id.* at 282a.

After its review, the Planning Commission recommended that the Application be approved, subject to 15 conditions. R.R. at 373a. At a public meeting on January 19, 2021,[7] the Board voted to approve the Application, subject to the 15 conditions recommended by the Planning Commission. *Id.* at 354a, 370a-72a. Counsel for the Association attended the Board's January meeting virtually on behalf of the Association, where he again commented on the Application. *Id.* at 324a, 338a-48a.

The Association appealed the Board's approval of the Application to the trial court, which entertained a motion to quash or dismiss the appeal for lack of standing filed by Applicant. R.R. at 490a. The trial court took no additional evidence, heard arguments, granted Applicant's motion, and dismissed the Association's appeal for lack of standing in an order dated April 23, 2021. *Id.* As to the Association's standing to appeal, the trial court found that "the [] Association failed to appear before the Board [] and raise objections to [Applicant's] [A]pplication," and held "that no issues were preserved for [] [the] Association to

---

[7] The transcript of the Board's January 19, 2021 public meeting may be found in the Reproduced Record at 324a-69a.

appeal to [the Commonwealth] Court." *Id.* The trial court's Pa.R.A.P. 1925(a) opinion confirmed its April 23, 2021 decision and order, and provided no additional reasoning. *Id.* at 491a. Because it dismissed the appeal for lack of standing, the trial court did not address the merits of the Association's appeal. *Id.* at 490a-91a. The Association then appealed to this Court.[8]

The Association presents four questions for our review. First, the Association argues that the trial court erred when it denied standing to the Association, when the Association has the authority to "[i]nstitute, defend or intervene in litigation or administrative proceedings, or engage in arbitrations or mediations, in its own name on behalf of itself or two or more unit owners on matters affecting the planned community," pursuant to Section 5302(a)(4) of the Uniform Planned Community Act, 68 Pa. C.S. §5302(a)(4) (Act). The Association further argues that the Board erred or abused its discretion in granting the Application when Applicant failed to provide sufficient evidence that it satisfied the conditions for approval in the Ordinance, that the Board erred when it considered information outside the record, and that Applicant failed to properly intervene in the appeal before the trial court. As to standing, Applicant and the Township respond that because the Association, as an entity, failed to make a "timely appearance of record before the [B]oard" pursuant to Section 908(3) of the Pennsylvania Municipalities

---

[8] In a land use appeal where the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). However, a challenge to a party's standing presents a question of law, subject to this Court's plenary, *de novo* review. *Lorenzen v. West Cornwall Township Zoning Hearing Board*, 222 A.3d 893, 898 (Pa. Cmwlth. 2019).

Planning Code, 53 P.S. §10908(3) (MPC),[9] the trial court properly denied standing to the Association. Applicant and the Township further deny that the Board or the Planning Commission committed errors in their review or in the appeal to the trial court.[10]

Our analysis of the Association's standing begins with the MPC. Section 908(3) of the MPC, 53 P.S. §10908(3), governs hearings and provides as follows:

> The parties to the hearing shall be the municipality, any person affected by the application who has made timely appearance of record before the board, and any other person including civic or community organizations permitted to appear by the board. The board shall have power to require that all persons who wish to be considered parties enter appearances in writing on forms provided by the board for that purpose.

This Court has clarified that, absent provisions in a land use ordinance, Section 908(3) of the MPC does not govern conditional use hearings before a board of supervisors but is limited to proceedings before a zoning hearing board, based on the MPC's definition of "board." *Worthington v. Mount Pleasant Township*, 212 A.3d 582, 588 n.15 (Pa. Cmwlth. 2019).

Here, however, Section 11.802.B.5 of the Ordinance, governing conditional use applications before the Township, provides as follows.

> Board of Supervisors Action – The Board of Supervisors shall conduct hearings and make decisions in accordance

[9] Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202. Section 913.2 of the MPC, 53 P.S. §10913.2, was added by the Act of December 21, 1988, P.L. 1329.

[10] Because of our disposition, we need not reach or discuss further the Association's arguments on the merits.

8

with §908 and §913.2 of the [MPC], as amended. In granting a conditional use, the Board may attach such reasonable conditions and safeguards (in addition to those expressed in this Ordinance) as it determines are necessary to implement the purposes of the [MPC] and this Ordinance, and to protect the public health, safety and welfare.

Section 913.2 of the MPC, 53 P.S. §10913.2, governs the conduct of conditional use hearings before a governing body, timelines, and other requirements for rendering a written decision, which are not relevant here. However, section 913.2(b)(3) of the MPC, 53 P.S. §10913.2(b)(3), provides that "[n]othing in this subsection shall prejudice the right of any party opposing the application to appeal the decision to a court of competent jurisdiction." Therefore, our determination of whether the Association has standing to pursue its appeal is governed by the Ordinance and Sections 908(3) and 913.2 of the MPC.

We further note that standing to pursue a land use appeal

comprises two concepts. The first is substantive standing, which looks to whether the putative litigant has a sufficient interest in the outcome of the litigation to be allowed to participate. This facet of standing—whether one has an interest that is direct, immediate and substantial—is required at all levels of proceedings, and in the context of standing to appeal is generally described as whether one is "aggrieved" by the decision sought to be reviewed. The other aspect of standing, the one at issue both here and in *Leoni* [*v. Whitpain Township Zoning Hearing Board*, 709 A.2d 999 (Pa. Cmwlth. 1998),] is procedural in nature, i.e., whether one has asserted his right to participate sufficiently early. This inquiry involves a balancing of the interests of judicial economy and those of due process. Objections must be stated in sufficient time that they can be heard without duplicative hearings, but not until potential objectors have sufficient notice of the proceedings that it is reasonable to expect them to assert their rights.

*Miravich v. Township of Exeter*, 6 A.3d 1076, 1078 (Pa. Cmwlth. 2010). Here, neither Applicant nor the Township argues that the Association lacks substantive standing, as there is no dispute that several residents of Millbrook who appeared before the Board at the October 20, 2020 public hearing are landowners who live adjacent to the proposed Project. Therefore, we focus on whether the Association "asserted [its] right to participate sufficiently early" in the Board's review of the Application to demonstrate that it had procedural standing, and we conclude that it did. *Miravich*, 6 A.3d at 1078.

The transcript of the Board's October 20, 2020 hearing clearly shows that at least four residents of Millbrook appeared before the Board to voice their objections to the Application. *See* R.R. at 59a, 65a, 71a, 72a-73a, 77a, 80a-83a. One Millbrook resident, Mr. Bova, further identified himself as a member of the board of the Association. *Id.* at 65a. Although none of the residents at the October 20, 2020 Board hearing responded to the Township solicitor that they were formally intervening in the hearing, each one of them made objections to the Application and engaged in dialogue with Applicant and the Board, even though they were not permitted to formally question witnesses or offer evidence. *Id.* at 55a-88a.

Further, the transcripts of the meetings of the Planning Commission, which occurred after the Board hearing but before the Board's vote on the Application, reveal that several Millbrook residents and the Association appeared to voice their objections to the Application, as well as their confusion over their status as intervenors. Millbrook resident and president of the Association's board, Mr. Kissel, attended the November 10, 2020 Planning Commission meeting and objected to the Application. R.R. at 97a. Counsel for the Association attended the December 8, 2020 Planning Commission meeting virtually, where he objected on behalf of the

10

Association. *Id.* at 202a, 218a, 231a. Counsel for the Association attended the January 19, 2021 Planning Commission meeting in person, where he again objected on behalf of the Association. *Id.* at 271a, 284a. At that meeting the Township solicitor referred to the Association as an objector. *Id.* at 282a. In addition, Millbrook resident Mr. Frassa attended the November 10, 2010 Planning Commission meeting where he explained that he and other Millbrook residents who attended the Board's public hearing did not understand the Township solicitor's explanation about intervenor status. *Id.* at 99a, 101a.

Although Section 908(3) of the MPC permits the Board to "require that all persons who wish to be considered parties enter appearances in writing on forms provided by the [B]oard for that purpose," the Township does not contend that the Millbrook residents who attended the October 20, 2020 public hearing failed to enter their appearances in writing on a form provided by the Board. The Ordinance does not require that interested individuals enter a written appearance to secure party status, nor does it provide any forms to do so. This Court has analyzed the requirements of Section 908(3) of the MPC and denied procedural standing to landowners that "failed to object or appear in any way in zoning board proceedings and have nevertheless attempted to appeal the board's decision." *Leoni*, 709 A.2d at 1003. We have also held that when a board "does not have an established policy that would allow those in attendance at the hearing to declare their status as parties to the hearing," individuals who attend a hearing and voice their objections may not be denied standing for failure to formally enter a written appearance before the board. *Grant v. Zoning Hearing Board of the Township of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001). Therefore, we conclude that the four Millbrook residents who attended and voiced their objections to the Application at the Board's October 20,

11

2020 hearing asserted their right to participate "sufficiently early" in the process to satisfy the requirements for procedural standing in this matter. *See Miravich*, 6 A.3d at 1078. We also note that the Association, as an entity, through counsel, appeared before the Planning Commission to voice the objections of the Association shortly after the Board's public hearing and before the Board voted on the Application. *See* R.R. at 202a, 218a, 231a, 271a, and 284a. The Township solicitor referred to the Association as an objector at the January meeting of the Planning Commission. *Id.* at 282a. Under these facts, we conclude that the Association asserted its rights "sufficiently early" in the process to satisfy the requirements for procedural standing. *Miravich*, 6 A.3d at 1078.

We also conclude that the Association, on behalf of the members who objected at the October 20, 2020 Board hearing, has standing to pursue this appeal based on the plain language of the Act. Section 5302(a)(4) of the Act specifically provides the Association with authority to "[i]nstitute, defend or intervene in litigation or administrative proceedings . . . in its own name on behalf of itself or two or more unit owners on matter affecting the planned community." Further, our court has held that "'[a]ssociations have standing to sue on behalf of their members if they allege that at least one of their members has or will suffer a 'direct, immediate and substantial injury' to an interest as a result of the challenged action.'" *Lorenzen v. West Cornwall Township Zoning Hearing Board*, 222 A.3d 893, 899 (Pa. Cmwlth. 2019) (internal citations omitted). Here, there is no dispute that the members of the Association who appeared before the Board alleged that they would suffer a "direct, immediate and substantial injury" as a result of the Application.

Accordingly, we reverse the trial court's order and remand this matter to that court for further proceedings on the merits of the Association's appeal.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal by Millbrook : 
Homeowners Association : 
from the January 20, 2021 : 
Conditional Use Decision of : 
the Palmyra Township Board : No. 528 C.D. 2021
of Supervisors : 
 : 
Appeal of: Millbrook Homeowners : 
Association : 

# **O R D E R**

AND NOW, this 19th day of September, 2023, the order of the Pike County Court of Common Pleas dated April 23, 2021, is REVERSED, and this matter is REMANDED to that court for proceedings in accordance with the foregoing Memorandum Opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge